BOWERS *v*. COBB, Ex'r.

*(Circuit Court, D. Massachusetts.   July 29, 1887.)*

1. PRINCIPAL AND SURETY—RELEASE OF SURETY—CHANGE OF PARTIES.
    Where the condition of an indemnifying bond is that the sureties thereon
will save harmless A. and B., proposed sureties of the principal on a probate
court bond about to be given by him as trustee, the sureties have a right to
stand on the very terms of their contract, viz., reimbursement of A. and B.
for any damage accruing to *them* by reason of their signing the probate bond;
and the execution of a guaranty by B. to A., without the knowledge of such
sureties, which by its terms releases A., so far as B. is concerned, from all lia-
bility on the probate bond, operates to discharge the sureties on the bond of
indemnity.[1]

2. SAME—ACCEPTANCE OF PRINCIPAL'S NOTE—IGNORANCE OF RIGHTS.
    A surety on the bond of an insolvent defaulted trustee, who, in ignorance
of his right to proceed against a sound surety on an indemnifying bond exe-
cuted in his favor, accepts notes of the trustee in payment of the loss entailed
upon him by his suretyship on the trust-bond, is estopped thereby to proceed
against the surety on the indemnifying bond.

At Law.

*A. S. Wait*, for plaintiff.

*Henry Wheeler* and *E. W. Hutchins*, for defendant.

CARPENTER, J.   This case has been heard by the court on an agreed
statement of facts.   It appears that, in 1871, John H. Swasey, of Bos-
ton, applied to the probate court for the county of Grafton, in the state
of New Hampshire, to be appointed trustee for Benjamin M. Swasey; that,
in order to qualify himself thereto, he was required to file a bond, with
two sureties, residents of New Hampshire; that Edmund Burke and
Shepard L. Bowers, of Newport, New Hampshire, agreed to become
sureties, provided they were secured by a bond of indemnity, with
Harvey D. Parker and Jacob Hittinger, of Boston, as sureties; that
thereupon the bond of indemnity now in suit was sent to Burke, signed
by Swasey as principal, and by Parker and Hittinger as sureties; that
Bowers then declined to sign the probate bond unless Burke would also
indemnify him; and that Burke then executed, without the knowledge
of Parker, an obligation under seal, whereby he agreed with Bowers to
"indemnify and save him harmless from all damage, expense, and cost
which may accrue to him by reason of his signing said bond of said
Swasey before mentioned."   It further appears that Burke and Bowers
thereupon signed the probate bond as sureties with Swasey; that, in
1878, Benjamin M. Swasey died, and it was then found that John H.
Swasey was a defaulter in his trust; that he thereupon made an assign-
ment to Parker and Burke of his interest in the estate of Benjamin M.
Swasey; that John H. Swasey and Hittinger were then insolvent; that

───────────

[1]Sureties have a right to stand on the strict terms of their obligations.   Wier Plow
Co. v. Walmsley, (Ind.) 11 N. E. Rep. 232, and note.
    Any material variation of the contract between the principals, without the assent of
the sureties, will discharge the latter.   Id.

the amount of the trust-estate for which Swasey was liable, deducting his interest in the estate, was $4,400, which amount was paid by Burke and Parker in equal shares; that Swasey thereupon gave to Burke and Parker each a note for $2,200, and also an assignment of his claim on E. C. Drew; that Parker collected on said claim $261, and indorsed one-half thereof on Swasey's note, and sent one-half thereof to Burke, who also indorsed the amount on Swasey's note, and sent to Parker a receipt therefor; and that Burke and Parker are now dead. This action was brought by Bowers, as surviving obligee, for the benefit of the executrix of Burke, against the defendant, who is executor of Parker.

I have concluded that this action cannot be maintained. I think the delivery of the guaranty by Burke to Bowers operated to discharge the sureties on the bond here in suit. The sureties are entitled to stand on the very terms of their contract, and are not bound by any variation which shall be made therein without their consent. Their contract in this case recited that Burke and Bowers had, at request of Swasey, become sureties for him on the probate bond, and thereupon agreed to hold them harmless against all damages which might accrue to them by reason of such signature. The fact was that not only did Burke and Bowers sign the probate bond, but also there was a guaranty given by Burke to Bowers before the bond was signed, the effect of which was that, as between themselves, only Burke should be liable. Their liability to the probate court could not be changed by the execution of this guaranty, and the only change made in their relation to each other was that, if Burke should pay the whole amount for which the two became liable, he would have no claim for contribution on Bowers; and, if Bowers should pay any part of that amount, he would have a claim for reimbursement from Burke. In other words, the delivery of the guaranty would make no difference in the amount which Parker might become liable to pay, nor in the contingencies under which that liability might arise. It made a difference, however, in the respective positions of Burke and Bowers towards Swasey, and it was with reference to their position towards Swasey that the contract here in suit was given. I have, not without much hesitation, reached the conclusion that it made a material change in the contract against which Parker undertook to defend Burke and Bowers.

In the second place, I am strongly inclined to the opinion that it must be inferred from the agreed statement that the note given by Swasey to Burke was intended by the parties as payment of the sum here in question, for which Swasey was primarily liable, and that the surety was thus discharged. It would seem to require strong evidence to satisfy the mind that Burke accepted the note of Swasey, who was insolvent, in place of the bond of Parker, who was a man of large means. But it appears by a letter from Burke to B. F. Putnam, who was administrator on the estate of Benjamin M. Swasey, that Burke had to some extent forgotten the nature of the relation in which he and Parker stood. He says: "Harvey D. Parker, proprietor of the Parker House, and myself, I suppose, are liable as his [J. H. Swasey's] bondsmen. Mr. Parker, I

think, is not on the bond, but he indemnifies Mr. Bowers, who is. That is my recollection of the matter." If Mr. Burke supposed this was the state of the case, he might well accept in payment of his loss the note, with whatever of security Swasey was able and willing to give. The amount of the loss was equally divided between the two. Burke never made any demand on Parker for reimbursement, although he lived over three years after the notes were given; and he received from Parker the half part of a small sum which was received from the securities turned in by Swasey. If he had not intended to accept the note in payment, but intended to demand indemnity from Parker at such time as the final amount of the loss should be ascertained, he would probably have required that at least the whole amount realized from Swasey should be paid to him. The fact that he was under an error as to his legal rights when he accepted payment would not, I think, change the results of that act.

The defendant further contends that the action of Burke had the effect to notify to Parker that he had no claim on him, and that the plaintiff is therefore estopped in this action. I do not think it necessary to refer to this defense further than to say that there is no evidence that Parker did any act, or lost any valuable thing, by reason of this representation, if such there was; and hence no estoppel arose.

There will be judgment for the defendant.